HAWKINS, Justice, for the Court:
Minnie Lee Thedford Orcutt Bornaschella appeals from a decree of the Chancery *769 Court of Claiborne County adjudicating former decrees of that court, as well as a property settlement and agreement between Mrs. Bornaschella and her former husband precedent to one of the decrees, invalid.
This is the only issue we address on this appeal, and finding the chancellor to have erred in this adjudication, we reverse.
Minnie Lee Thedford Orcutt filed suit for divorce, alimony, child support and property division against her husband Eddie James Orcutt in the Chancery Court of Claiborne County on May 18, 1978. Four children had been born of their marriage, but their eldest child, a daughter, had married. Mr. Orcutt did not contest the action, nor employ counsel, and upon personal service of process she obtained a final decree of divorce at a regular term of court on July 19, 1978.
The late Fred C. Berger was chancellor. The decree granted her a divorce from her husband on the grounds of habitual cruel and inhuman treatment, awarded her custody of their three youngest children (with right of reasonable visitation in Mr. Orcutt), temporary support and maintenance, and other relief.
The final paragraph of the decree stated: That the matters of permanent alimony, permanent child support and all questions concerning permanent rights and division of properties, etc. between the parties raised in the Bill of Complaint are set to be heard by this Court at 9:30 A.M. on the 23rd day of August, 1978, at the Court House in Port Gibson, Mississippi.
Shortly thereafter, Judge Berger died, and a property settlement and support agreement was presented in chambers to Chancellor Ben Chase Callon. This decree, dated August 14, 1978, recites the rendition of the divorce decree, and the fact that such decree reserved the matters of permanent alimony, permanent child support and all questions concerning permanent rights and division of properties for a later hearing on a day in August. This decree then states:
And it now appearing that the parties have voluntarily entered into a “Property Settlement and Support Agreement, Etc.” dated the 10th day of August, 1978, which the Court has examined and approved,
NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED: FIRST: That the said “Property Settlement and Support Agreement, Etc.” of August 10, 1978, between the parties hereto is approved and made a part of this decree by reference as if fully copied herein; and
SECOND: That the payments for alimony and child support provided for in said agreement shall be due and payable on the first day of each and every month, beginning on September 1, 1978.
In all matters through this August 14, 1978, decree, Mrs. Orcutt was represented by Jake L. Abraham, an attorney in Port Gibson. According to Mr. Abraham, it was the desire of the parties that the actual agreement between the parties not be attached to the decree or incorporated therein. Mr. Abraham also informed Mr. Orcutt during this period that he should obtain his own counsel, but he declined to do so. The agreement between the parties was negotiated between the parties themselves, with Mrs. Orcutt telling Mr. Abraham what her husband would agree to. A final agreement between them was signed and dated August 10, 1978. It was this agreement which Mr. Abraham presented to the chancellor.
The parties’ agreement of August 10, 1978, headed “PROPERTY SETTLEMENT AND SUPPORT AGREEMENT, ETC.” set out the division and respective rights of the two of them in their considerable real and personal properties. The agreement further provided that as support for Mrs. Or-cutt and the minor children, she would receive the interest on certain investments and as additional support he would pay her one-third of his salary, or if self-employed, one-third of his net income.
Mrs. Orcutt filed a petition in the same cause June 1, 1979, setting out the property settlement and support agreement, the de *770 cree of July 19, 1978, granting her a divorce, and the decree of August 14, 1978, approving the agreement, and attached copies of all documents, including the agreement, as exhibits to the petition. Her petition then recited the failure of Mr. Orcutt to abide by the August 14, 1978, decree and their agreement, and that he should be held in contempt of court. She also prayed for a partition of realty and other relief.
Mrs. Orcutt in this petition was then represented by V. Douglas Gunter of Jackson. Mr. Orcutt employed Mark W. Prewitt of Vicksburg as his counsel, and filed an answer to the petition on July 12, 1979. His answer admitted the agreement reached between the parties and the two court decrees. He denied some of the other allegations of the petition, and claimed homestead exemption on certain property she sought to partite.
Prior to any hearing on this petition and answer, the parties again effected a compromise settlement of their affairs. On July 31, 1979, they executed a supplemental agreement entitled “PROPERTY SETTLEMENT AND SUPPORT AGREEMENT,” which was presented to Chancery Judge Frank Walden, who rendered a decree on July 31, 1979. This decree recited that the court had jurisdiction of the parties and the subject matter. The court approved the property settlement and agreement “and modification of former decree of this Court,” finding that the agreement was satisfactory. The final paragraph recited the adoption and acceptance by the court of this settlement as a “full, final and complete settlement of all property rights of the parties hereto.”
Judge Walden was also the presiding chancellor at all subsequent proceedings.
On May 21, 1980, Mr. Orcutt in the same cause filed a sworn petition to modify the July 31, 1979, decree and for other relief. Mr. Prewitt was his solicitor. This petition alleged the remarriage of Mrs. Orcutt, who will be referred to hereafter as Mrs. Bor-naschella, and that he was entitled to a refund on alimony payments. The petition was also filed to obtain additional relief in reference to some of their personal property.
Mrs. Bornaschella filed an answer to the petition and a cross-bill on July 5, 1980. Mr. Orcutt filed an answer to the cross-bill.
On August 5, 1980, Mr. Prewitt filed a motion to withdraw as Mr. Orcutt’s counsel, following which Orcutt was represented by legal counsel from Natchez.
On October 21, 1980, counsel for Mr. Or-cutt filed a motion to amend his petition. On December 12, 1980, Mr. Orcutt filed a “Petition for Leave of Court to File a Bill of Review and/or a Bill in the Nature of a Bill of Review and/or a Petition Requesting other Relief.” This petition charged that the divorce decree and other decrees were entered through mistake and fraud on the part of his former wife. The thrust of this petition was that his former wife had been guilty of adulterous relations while they were married, and that he should be relieved from the decrees and all agreements he had entered into.
This petition alleged that he had no knowledge of her adulterous activities, that “he diligently attempted to obtain information regarding her activities but, however, he could not.”
Mrs. Bornaschella answered this petition, and also filed general and special demurrers. The special demurrer set out the statute of limitations. These demurrers were overruled and, on January 6, 1981, the chancellor entered a decree authorizing Mr. Or-cutt to file his bill.
On January 22, 1981, Mr. Orcutt filed a “Bill of Review or a Bill in the Nature of a Bill of Review and/or a Bill of Review Requesting other Relief.” This bill set forth the same allegations in support of relief as the petition for authority to file it, namely: he should be relieved of the former decrees of divorce and other relief and the agreements because of her fraud. Her fraud allegedly consisted of having been an adulterous wife, which he did not know about, and which he could not by due diligence discover prior to all these decrees and agreements having been entered into.
*771 Mrs. Bornaschella answered the bill, pleaded the statute of limitations, estoppel, and raised other defenses. Other motions and orders were filed, but we find them unnecessary to detail for purposes of this opinion.
The bill came on for hearing before the chancellor on February 10, 1981, and at this hearing for the first time, counsel for Mr. Orcutt made a motion ore ten us to amend the bill to conform to the proof to show the decree of August 14, 1978 was void because the matter was heard in vacation on a date different from the time set by decree rendered July 19, 1978, in term time of the Chancery Court of Claiborne County.
The chancellor sustained this motion. Following this he ruled that the divorce decree was valid, but that the chancellor had no jurisdiction to enter the decree of August 14, 1978, because it was not the time specified in the divorce decree rendered at the regular term of court.
Following the hearing, the chancellor rendered an opinion that the bill of review was not sustained by sufficient proof. He further was of the opinion that the August 14, 1978, decree was void because the chancellor lacked jurisdiction to render it on that date. Finally, he found that the subsequent agreement between the parties of July 31, 1979, and his decree rendered on July 31, 1979, were likewise subject to being vitiated and set aside because of the “mistake” on the part of Mr. Orcutt in not knowing the August 14, 1978 decree was “void” when he executed the agreement of July 31, 1979, and the approval of which his attorney and Mrs. Bornaschella’s attorney secured by decree of the court on the same date.
Following this the chancellor proceeded to hear and adjudicate all matters pertaining to alimony and property rights in their substantial properties and financial dealings as though nothing had been done by the chancery court following the divorce decree July 19, 1978. We need not relate all that subsequently transpired in the chancery court, as it is unnecessary for this appeal. As might be surmised, however, from the conclusion reached by the chancellor, the path of the trial proceedings got worse and worse until the court and all parties were mired to their respective axles.
The final decree of the chancery court rendered March 12, 1981 found the August 14, 1978 decree invalid, and the 1979 decree and property settlement likewise invalid. The decree then set forth the rights of the parties concerning custody, child support and their property.
Mrs. Bornaschella perfected her appeal to this Court, and following a hearing before the chancellor to set its amount, filed a supersedeas bond.
Mr. Orcutt filed a cross-appeal from that portion of the decree adjudicating property accumulated during their marriage while the parties were residents of Louisiana was community property.
On August 25, 1981, long after the appeal had been perfected to this Court, Mr. Or-cutt filed another petition in the same cause in the Chancery Court of Claiborne County challenging the adequacy or validity of the supersedeas bond, that Mrs. Bornaschella had disposed of some of the securities held by her, and other claims relative to their properties.
Following notice to Mrs. Bornaschella, the chancellor conducted a hearing on this petition, gave an oral opinion, and rendered a decree on September 15, 1981.
While the decree recited a lack of jurisdiction as to the validity of the supersedeas bond, it adjudicated rights between the parties, placed a lien on certain real property of Mrs. Bornaschella, and directed the sale of a certificate of deposit.
Mrs. Bornaschella has also appealed from the September 15, 1981, decree. By stipulation and agreement of the parties, these subsequent proceedings have been included and made a part of the record on appeal.
The chancellor initially erred in overruling the general and special demurrers to the petition for a bill of review or a bill in the nature of a bill of review.
It was filed more than two years following the decree for divorce, and was *772 therefore subject to Miss.Code Ann. § 11-5-121, which requires that bills of review be filed within two years following the date of the final decree in the cause. Furthermore, bills of review are not favored. Fondren v. Bank of Franklin, 187 So.2d 304 (Miss.1966). We note that Mr. Orcutt, a man of some financial substance, did not see fit to obtain an attorney when his wife filed suit against him and obtained a divorce July 19, 1978. In their agreement and property settlement of August 10, 1978, he again sought no legal counsel, insofar as revealed by the record. The following year, when his wife sought to have him cited for contempt, he recognized the August 14, 1978 agreement and decree, when he was represented by counsel of recognized stature and ability. Again represented by counsel, Mr. Orcutt and his wife entered into a subsequent property settlement and agreement, and a decree was rendered thereon.
The sole basis for this bill of review was the alleged adultery of his wife, which he claimed he had diligently attempted to discover. When his wife sued him for divorce, Mr. Orcutt could have answered and obtained lawful process of the chancery court to secure any such information about his wife. Not choosing to do so, it is incredible to this Court that he should expect any review of their marital life over two years after the divorce decree, his wife having remarried. On its face, the petition stated no basis or foundation for a bill of review, and the chancellor ruled Orcutt had no basis in fact to support his claim.
In the hearing on the bill of review, the chancellor also erred in holding that the decree of August 14, 1978, was void.
As we have stated, the basis of this ruling was that the divorce decree set a date certain in vacation when the matters pertaining to alimony and child support and property rights would be heard, but the decree rendered thereon was another date. The learned chancellor felt that under Miss.Code Ann. § 93-5-17 (Supp.1981) and Moran v. Moran, 252 Miss. 890, 173 So.2d 916 (1965), the decree of August 14, 1978, was void.
Miss.Code Ann. § 93-5-17 and Moran (decided under this statute prior to amendment) simply require that the proceedings to obtain a divorce shall not be considered except in open court, with certain exceptions. None of the proceedings in this case subsequent to July 19, 1978 involved “proceedings to obtain a divorce” as envisioned by either the statute or Moran. See Spradling v. Spradling, 362 So.2d 620 (Miss.1978).
Rather, all proceedings in this case were under the general statutes regarding the power of the chancellor to act in vacation. Under Miss.Code Ann. § 9-5-91 (Supp.1972), a chancellor has jurisdiction, and is empowered to conduct a hearing and enter a decree in vacation on a date different than that set by a decree rendered during a term, and even where there has been no decree in term time setting a date certain for vacation hearing; provided, of course, there has been adequate notice to the parties and no fraud or mistake is involved in the time and place of vacation hearing. See Sperier v. Ward, 233 So.2d 823 (Miss.1970).
In this case, however, there was not even a hearing. Mr. Abraham, as he was fully authorized to do, simply presented to the chancellor for approval an agreement between the parties that contained and settled all issues for which the vacation hearing had been set. No contention was ever made by Mr. Orcutt or his counsel that he had been misled in any manner in executing the agreement with his wife dated August 10, 1978, or in its presentation to and approval by the chancellor on August 14, 1978. The presentation to the chancellor of this agreement between the parties rendered any hearing contemplated by the divorce decree unnecessary. The parties had compromised and settled the matter between themselves, which the chancellor approved by decree. It would be novel indeed to hold that when parties have compromised their differences they must wait until the date theretofore set for trial of their lawsuit to secure a judgment or decree approving their settlement and thereby settling and terminating all controverted issues.
*773 We also observe the decree which the chancellor set aside had been rendered at least two and one-half years previously. The judge who signed the decree was no longer judge; the attorney who presented the decree was no longer in the case. The sole basis for declaring this decree a nullity was its date; it was not the same date as that set by a term time decree. Courts have no responsibility to do so, and should not attempt to set aside decrees long since rendered and entered, which have settled issues between parties, and which they have relied and acted upon, solely because an examination of a date indicates the decree should have been rendered on some other date. The validity of judgments do not hang upon such a fragile thread. The mistake could be that of the judge in writing the wrong date, the attorney’s, the clerk’s, or some stenographer. We have no doubt if a “date” survey were made of the thousands of judgments and decrees in this state, there would be a not inconsiderable number the dates of which would cause curiosity, wonder or amazement.
We therefore hold the August 14, 1978 decree is valid, and any ruling or adjudication otherwise by the chancery court is itself a nullity.
This holding is dispositive of this case, but the ruling of the chancellor that the July 31, 1979 modification agreement between the parties and the decree rendered thereon the same date were likewise either void, or voidable at Mr. Orcutt’s option, does require some comment. It was the opinion of the chancellor that because the August 14, 1978 decree was “void”, when Mr. Orcutt entered into negotiations to compromise the differences between himself and his wife following her petitioning the court to cite him for contempt, he was “mistaken” in believing he was obligated under a decree he thought valid, but which was in fact “void”. And, because of this “mistake” on his part, he made an agreement which he might not have made otherwise, and was entitled to be relieved therefrom.
This rationale overlooks the following:
(1) The chancery court file, a public record, fully disclosed the discrepancy, which was obvious to any cursory examination at all times following August 14, 1978;
(2) Any attorney undertaking to represent either of the parties would have some obligation to examine the court file to ascertain all previous proceedings and decrees thereon;
(3) Any chancellor undertaking to make a ruling on any proceeding in this cause would likewise have some obligation to examine the court file as to all antecedent decrees;
(4) An able and distinguished attorney who represented Mr. Orcutt in all the 1979 proceedings made no issue of this discrepancy, if he in fact noted it;
(5) An able and distinguished attorney from Natchez who made a motion on behalf of Mr. Orcutt to amend his petition for modification of the decree of July 31, 1979, made no issue of this discrepancy, if he in fact noted it;
(6) Another able and distinguished attorney from Natchez who filed a petition for permission to file a bill of review made no mention of this discrepancy in his petition, if he in fact noted it;
(7) The distinguished chancellor whose official obligation prior to signing the decree of July 31, 1979, was to determine his jurisdiction and authority to do so, also failed to look two sheets back in the file and ascertain this discrepancy.
It was only after a hearing had begun on the bill of review that Mr. Orcutt’s last employed attorney discovered this discrepancy and brought it to the attention of the same chancellor who signed the July 31, 1979 decree.
Where was there any misrepresentation or concealment by either Mrs. Bornaschella or her counsel of a discrepancy which would have been blantantly obvious to any person who had taken the trouble to examine the court file?
If there had been any mistake on the part of Mr. Orcutt in entering into the negotia *774 tions resulting in the July 31, 1979 agreement and decree resulting therefrom, it was the result of his, his counsel’s, or the trial judge’s oversight. McGee v. Clark, 343 So.2d 486 (Miss.1977), cited by the chancellor as the basis for holding Mr. Orcutt had entered the negotiations under a “mistake”, contains none of the above features.
Even if we were constrained to hold, when indeed we hold the reverse, that the decree of August 14, 1978 was defective, the July 31, 1979 agreement between these parties, when both were represented by able counsel, and the consent decree rendered pursuant thereto on the same date were valid, legal and binding, and are entitled to full force and effect.
One paragraph of the decree of March 12, 1981 in which the chancellor made the above set forth erroneous adjudications did act on the petition filed May 21, 1980 to modify the divorce decree of July 19, 1978 pertaining to child custody. In this paragraph of the decree, Mr. Orcutt’s visitation right as to the two children then living with Mrs. Bornaschella was enlarged from a reasonable visitation as provided in the divorce decree to the third weekend in every month beginning Friday afternoon at 5:00 o’clock and concluding at 5:00 p. m. the following Sunday. There is no dispute between the parties as to this one modification, and our decision will not affect this change in the visitation right of Mr. Orcutt.
Holding as we do the decree of the chancery court of August 14, 1978, the agreement between the parties' dated July 31, 1979, and the decree thereon of the same date all legal, valid and binding, the chancellor had no authority to invalidate any of them.
The September 15, 1981 decree correctly held the chancery court lacked jurisdiction in deciding the validity of the supersedeas bond. Beyond that, however, the decree dealt with property rights and interests in property for events and transactions which had transpired prior to the February, 1981, hearing resulting in the March 12, 1981 decree. The chancellor was without jurisdiction to make any determination therein in a post-trial proceeding with the case on appeal. In holding the chancellor was without jurisdiction to entertain the petition for this post-trial relief, we do so without prejudice to Mr. Orcutt to petition for and obtain any legal or equitable relief available for conversion of assets belonging to him;
In view of our holding there is no need to address the error assigned in the cross-appeal.
This cause is reversed and judgment rendered for the appellant on any decree or portion thereof which affects the legality or validity of the August 14, 1978 decree, the agreement of the parties of July 31, 1979, and the decree of July 31, 1979.
The portion of the March 12, 1981 decree which enlarged the visitation right of the appellee is affirmed.
As to the September 14, 1981 decree, the cause is reversed and rendered without prejudice to Mr. Orcutt to obtain whatever legal or equitable remedy is available for any claim he has against his wife for wrongful conversion of assets belonging to him.
REVERSED AND RENDERED IN PART, AFFIRMED IN PART, AND CROSS-APPEAL DISMISSED AS MOOT.
PATTERSON, C. J., and SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING and PRATHER, JJ., concur.
DAN M. LEE, J., dissents.