455 So.2d 544 (1984)
ALL SEASONS RESORTS, INC., Appellant,
v.
DEPARTMENT OF BUSINESS REGULATION, DIVISION OF LAND SALES, CONDOMINIUMS AND MOBILE HOMES, Appellee.
No. AZ-26.
District Court of Appeal of Florida, First District.
August 23, 1984.
*546 Robert P. Smith and Frank E. Matthews of Hopping, Boyd, Green & Sams, Tallahassee, for appellant.
Thomas A. Bell, Tallahassee, for appellee.
MILLS, Judge.
All Seasons Resorts, Inc. (A-S) appeals from a declaratory statement, entered by appellee (Division) pursuant to Section 120.565, Florida Statutes (1983), finding the provisions of Chapter 721, Florida Statutes (1983), "Real Estate Time-Share Plans," applicable to A-S' operations in Florida.
In January 1984, A-S began offering certain memberships for sale to visitors at a Lake County, Florida, campground. For sale were lifetime licenses to use any campground now in, or later added to, the network of campgrounds owned by A-S and located in various states. The purchaser would receive a license for nonexclusive use of a nonspecified parking site for a recreational vehicle, camper or tent in any A-S campground. Each site is a small plot of ground improved by utility services to the vehicle, typically consisting of an electrical hookup, a fresh water spigot and a wastewater discharge line or basin. Other amenities usually provided are a general store, recreation hall, swimming area and other recreational-type improvements (tennis courts, etc.). A member's stay in an A-S campground is limited to 14 days at any one time, after which period the member must refrain from visiting any A-S campground for 7 days. The member may then make another 14-day stay at any A-S campground, with 7 days off, ad infinitum.
A-S' sales activity in Florida ceased after the Division informed A-S that it must comply with Chapter 721, governing the sale of real estate time-share plans. On 7 March 1984, A-S filed with the Division a petition for declaratory statement pursuant to Section 120.565 seeking a declaration that Chapter 721 was inapplicable to it. (Pursuant to Section 120.565, a declaratory statement sets out the agency's opinion as to the applicability of a specific statutory provision as it applies to the petitioner in his particular set of circumstances only.) A-S based its arguments against the applicability of Chapter 721 primarily on the definitional portions of the chapter.
Section 721.03(1) provides that the chapter is applicable "to all time-share plans consisting of more than 7 time-share periods over a period of at least 3 years in which the facilities or accommodations are located within this state." (Emphasis supplied). Therefore, before applicability to an operation can be found, these elements must be present. Time-share plan is defined at Section 721.05(28) as "any arrangment, plan, scheme, or similar device... whereby a purchaser, in exchange for a consideration, receives ownership rights in or a right to use accommodations or facilities, or both, for a period of time less than a full year in any given year ... and which extends for a period of more than 3 years." Section 721.05(27) defines time-share period as "that period of time when a purchaser of a time-share plan is entitled to the possession and use of the accommodations or facilities, or both, of a time-share plan." Accommodation, according to Section 721.05(1) as it read at the time of the declaratory statement, means "any apartment, condominium or cooperative unit, cabin, lodge, or hotel or motel room or any other private or commercial structure which is situated on real property and designed for occupancy by one or more individuals." Facilities means "amenities ... other than the time-share unit [an accommodation divided into time-share periods, § 721.05(30)], which are made available to the purchasers of a time-share plan." Section 721.05(16). As *547 is apparent from this brief outline, the statutory definitions are tightly interwoven, with the failure of an operation to include any portion thereof affecting the applicability of the remainder to that operation.
In its petition, A-S argued that its program was not covered by Chapter 721 for 3 reasons: 1) its lack of time-share periods, Section 721.05(27); 2) of time-share units, Section 721.05(30); and 3) of accommodations or facilities, Section 725.01(1) and (16). There were no time-share periods, argued A-S, because no right to use any specific period of time was being sold; no time-share units because the A-S member, unlike the purchaser with a right in an accommodation, enjoyed numerous campgrounds with no reserved sites; and no accommodations because A-S was offering neither any of the specific types of accommodations listed in Section 721.05(1) nor "a private or commercial structure which is situated on real property and designed for occupancy by one or more individuals." Facilities were not present either, A-S contended, since the amenities provided were not accompanied by a time-share unit, as required by Section 721.05(16).
On 20 April 1984, the Division issued its declaratory statement finding Chapter 721 applicable to A-S. The Division found that the requisite time-share periods existed in A-S' program as the requirement that any one campground stay be limited to 14 days, with 7 days off; the Division termed this scheme a "floating" plan, wherein the time-share period moves within the year, from year to year. Time-share units could not be ruled out of A-S' operation either, held the Division, as the statute did not limit the plan to one situs. Finally, the Division found that Chapter 721 applied to either accommodations or facilities. A-S utilized accommodations in two ways: 1) Section 721.05(1) includes "condominium or cooperative unit" as a type of accommodation. Chapter 718, Florida Statutes (1983), provides that a condominium or cooperative can be bare land. Therefore, bare land, such as A-S' campsites, can be an accommodation; and 2) the general statutory definition is "a private or commercial structure which is situated on real property and designed for occupancy by one or more individuals." (Emphasis supplied). By using standard dictionary definitions, the Division found that a structure did not have to be a dwelling-type unit and therefore the utility hook-ups improving A-S' sites qualified as structures; that occupancy equals possession, use and control; and, therefore, when the structure is used, it is occupied. Facilities were offered, concluded the Division, by way of the various amenities offered at A-S' campgrounds. Based on the foregoing, the Division held Chapter 721 applicable to A-S' operations. We reverse.
In response to A-S' arguments on appeal, which parallel, for the most part, its arguments in the petition below, the Division's basic response is to argue the court's obligation to accord substantial deference to the interpretation of the chapter made by the Division in the declaratory statement. We agree that it is well-settled that "[a]dministrative construction of a statute by an agency ... responsible for the statute's administration is entitled to great weight and should not be overturned unless clearly erroneous." Pan Am World Airways v. Florida Public Service Commission, 427 So.2d 716, 719 (Fla. 1983). (Emphasis supplied). We find clear error in this case.
As stated above, in order for Chapter 721 to apply to a given program, it must include a time-share plan containing time-share periods as well as accommodations or facilities. Section 721.03(1). A review of the characteristics of A-S' program shows that none of these elements, as defined by the chapter, exist therein. Purchasers of A-S' memberships are not buying a plan which gives them the "right to use accommodations or facilities, or both, for a period of time less than a full year in any given year." Section 721.05(28). First of all, we cannot accept the Division's strained interpretation of the term "accommodation" to include the campsites offered by A-S. The Division first attempts to argue that, because Chapter *548 718 includes "bare land" in its definition of "condominium or cooperative unit," one of the types of accommodations specifically enumerated in Section 721.05(1), the land constituting A-S' campsites is an accommodation. This ignores the general statutory language, also found in Section 721.05(1), that an accommodation is a "structure ... situated on real property." (Emphasis supplied). Bare land is not a "structure." It was further incorrect to assert that the utility hookups on the campsites are "structure[s] ... designed for occupancy by one or more individuals." The Division supports this theory by relying on selected standard dictionary definitions of the terms "structure" and "occupancy," neither of which is specifically defined by the Legislature in the statute. We are not bound by the Division's use of these definitions because, as this court stated in Department of Insurance v. Insurance Services Office, 434 So.2d 908 (Fla. 1st DCA 1983), reh. den. July 6, 1983:
"By urging a construction of statutory terms based upon their common ordinary meanings, the [agency] disavows the utilization of any special "agency expertise" in its interpretation of the statute. This mitigates, if it does not entirely eliminate, the rule calling upon the court to accord great deference to the agency interpretation of the statute."
Id. at 912, n. 6.
We find that by using these definitions, the Division has overlooked the intent of the Legislature, as indicated by the specific types of accommodations enumerated in Section 721.05(1), that the more general definition therein of "structure[s] situated on real property and designed for occupancy by individuals" refer to structures of the type suited to residency, not merely to use and control. This holding is consistent with the well-worn maxim that "[legislative] intent is determined primarily from the language of the statute [and] the plain meaning of the statutory language is the first consideration." St. Petersburg Bank and Trust v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982). Having determined that accommodations do not exist within A-S' program, it follows necessarily that no time-share units are involved. See Section 721.05(30). This precludes the Division's holding that A-S' program involves covered facilities, as facilities are "amenities ... other than the time-share unit" made available to the purchaser of a time-share plan. Section 721.05(16) (emphasis supplied).
We also cannot agree that time-share periods are being sold by A-S, as required in Section 721.03(1). Once again, the clear language of the statute indicates otherwise. In defining time-share plan, Section 721.05(28) states that the purchaser of such a plan buys a right to use for "a period of time less than a full year in any given year." (Emphasis supplied). Time-share period itself is defined by Section 721.05(27) as "that period of time when a purchaser ... is entitled to possession and use... ." (Emphasis supplied). The Legislature's use of the emphasized language clearly indicates that time-share period refers to a single period of time less than a year, within a year, when the purchaser thereof is entitled to use the rights he has purchased. In the case of A-S' program, purchasers do not buy a right to use for a single period of time within a year; on the contrary, they may use their membership to stay at campgrounds owned by A-S at any time of the year they choose for as many stays as can be accommodated within that year by the 14-day on, 7-day off requirement. Therefore, we find that time-share periods, as the term is employed by the Legislature in Chapter 721, are not utilized by A-S in its sales program.
Based on the foregoing, the Division's declaratory statement finding Chapter 721 applicable to A-S' particular circumstances is reversed. We do not address the constitutional propriety of the post-statement amendment of Chapter 721, as that amendment was not used to find the chapter applicable to A-S nor to enforce the chapter against it.
BOOTH and BARFIELD, JJ., concur.