602 So.2d 1155 (1992)
MISSISSIPPI REAL ESTATE COMMISSION, James D. Smith and Wife, Jean A. Smith, Glenn R. Cooper and Wife, Colette L. Cooper
v.
GEICO FINANCIAL SERVICES, INC. and Five Star Associates, Inc.
No. 90-CC-0716.
Supreme Court of Mississippi.
March 25, 1992.
Rehearing Denied July 22, 1992.
Samuel L. Begley, John L. Maxey, II, Maxey Pigott Wann & Begley, Jackson, James F. Thompson, J. Michael McGehee, Gulfport, for appellants.
John Edgar Johnson, Gulfport, Fredrick B. Feeney, II, Franke Rainey & Salloum, Gulfport, for appellees.
Kenneth L. Swarthout, Jr., Ocean Springs, James G. Tucker III, Bay St. Louis, for amicus curiae.
Before ROY NOBLE LEE, C.J. and ROBERTSON and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
This is an appeal from a judgment rendered by the Chancery Court of Harrison County finding that time-sharing plan and interval ownership regulations of the Mississippi Real Estate Commission (MREC) are inapplicable to a sale of property interests and memberships in a campground and its amenities. We reverse and remand.

I.
On May 2, 1989, James and Jean Smith (Smith) and Glenn and Colette Cooper (Cooper) instituted proceedings in the Chancery Court of Harrison County for declaratory relief against Five Star Associates, Inc. (Five Star) and Venture Out Resorts, Inc. (Venture Out). Smith and Cooper sought judgment declaring that (a) their purchase of memberships permitted them to use a campground and (b) their purchase of fee simple interests in the campground property, were subject to the rules and regulations of MREC pertaining to sale of time-sharing plans and interval ownership of property. MREC moved for and was granted intervention as a plaintiff. Geico Financial Services, Inc. (Geico), who had a financial interest in the campground property, moved for and was granted intervention as a defendant.
Five Star, successor of Venture Out, owns a campground in Harrison County. Fifty-eight (58) sites are available for member recreational vehicle parking. Each site has RV electrical and water hookups. A dump station is provided for vehicular waste removal. Also on the property is a swimming pool, boat dock, canoes, boat houses, and a security station. An A-frame cabin, RV's, and trailers on the property are available for rental by members.
Five Star offered for sale (a) terminable memberships entitling one to use all Five Star campgrounds wherever located and (b) undivided interests in the Harrison County campground property. Cooper and Smith each purchased memberships and undivided interests in the campground.
*1156 Membership rules restricted use of the campground by a member to fourteen (14) days at any one time. The record reveals a member "could only stay there for a total of fourteen days. After you stayed there fourteen days, you had to leave at least for seven days and then you could come back."
Applicable MREC regulations of "time-sharing plans" and "interval ownership" provide:
Rule 47-1(F)
"Time-sharing plan" and "interval ownership" means any arrangement, plan, scheme or similar device; whether by membership, agreement, tenancy in common, sale, lease, deed, rental agreement, license, right to use agreement, or by any other means, whereby a purchaser receives a right to use accommodations for a specific period of time.
RULE 47-1(A)
"Accommodations" means any structure, service improvement, facility, apartment, condominium or cooperative unit, cabin, lodge, hotel or motel room, or any other private or commercial structure which is situated on real property and designed for occupancy by one or more individuals.
MREC rules further provide that (a) sellers of time-sharing plans shall furnish their purchasers with a copy of the contract which satisfies a list of particulars; (b) the developer of time-sharing units is required to disclose various information in its public offering statement and to submit this document to MREC for approval; (c) a time-sharing unit developer is required to deposit fifty percent of all monies received from purchasers with an escrow agent, or alternatively, post adequate surety; (d) certain restrictions on representations and practices are placed on the advertisements of time-sharing plans; and (e) any seller of a time-sharing plan must be a licensed real estate broker or real estate salesman licensed pursuant and subject to the Mississippi Real Estate Licensure Law.
The Chancery Court, after review of the pleadings, rules, and evidence adduced on trial, found that the MREC rules and regulations do not apply to the Five Star campground sales. The court sustained Five Star's motion for directed verdict,[1] denied the relief sought by Cooper, Smith, and MREC, and rendered judgment for Five Star and Geico. Aggrieved, MREC appeals contending the Chancery Court erred in finding that Five Star was not subject to MREC rules and regulations applicable to time-sharing plans or interval ownership.[2]

II.
Admittedly, MREC enjoys power duly delegated by the legislature to adopt rules and regulations relating to time-sharing plans or interval ownership. It is without dispute that Rules 47-1(A) and (F) define "time-sharing plan," "interval ownership," and "accommodations" by MREC. After plaintiffs completed presentation of their evidence, Five Star and Geico moved to dismiss on the ground that upon the facts and the law, the plaintiffs showed no right to relief. The standard of review applicable on motion to dismiss under Rule 41(b) has been succinctly stated and distinguished from that applicable on motion for directed verdict. See Mitchell v. Rawls, 493 So.2d at 362-63; Davis v. Clement, 468 So.2d 58, 61-62 (Miss. 1985). But where, as here, the facts adduced during the chancery hearing are essentially without dispute, what we are left to decide is basically a question of law.
In attempting to determine the sufficiency and applicability of MREC's rules to Five Star's campground operation, it is proper to accord deference to the agency's construction of its own rules and regulations. Melody Manor Convalescent Center v. Mississippi State Dept. of Health, 546 So.2d 972, 974 (Miss. 1989). No Mississippi *1157 cases have explained the meaning of the precise words used by MREC. Similar language is found in real estate commission rules and regulations of other states, but none with the exact expressions used in our statute.
MREC rules and regulations include within the word "accommodations" any "service improvement ... designed for occupancy." The word "service" is defined to mean "providing services rather than tangible goods." The word "improvement" is defined as "the enhancement or augmentation of value or quality;" "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." The word "occupancy" means "the act of becoming an occupant or the condition of being an occupant;" "the condition of being occupied;" "the particular use or type of use to which property is put." Webster's Third New International Dictionary, (Unabridged 1976).
The standard dictionary definitions of the terms suffice to show that service improvement designed for occupancy is something less than a building. The RV electrical and water hookups as well as the dump station fall within the meaning of these terms as they are used in the rules and regulations. Simply expressed, the hookups and dump station were service improvements designed to make the property suitable for occupancy by vehicles used for living and sleeping purposes. Moreover, the placement of an A-frame cabin on the property and making it available for membership is a distinguishing convenience which falls clearly within the terms of the MREC definition. The record shows without contradiction that MREC interpreted the rules to apply to the Five Star campground sales.
Five Star contends that its membership rule restricting use of the campground to fourteen days at any one time does not equate with the member receiving a right to "use accommodations for a specific period of time." We disagree. The time a member may use the property is any 14 day period.

III.
We hold that the undisputed facts in this case establish that Five Star's sales of membership and property interests in the campground property were subject to the MREC rules and regulations applicable to time-sharing plans or interval ownership.
This case is reversed and remanded to the trial court to proceed as though the motion for dismissal under Rule 41(b) had been denied. We note that by making the motion, the defendant has not waived the right to offer evidence. We therefore reverse and remand for proceedings consistent with this opinion. Reynolds v. Druetta, 417 So.2d 917, 919 (Miss. 1982).
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and McRAE, JJ., concur.
BANKS, J., dissents with separate written opinion.
BANKS, Justice, dissenting:
Because I believe that the deference due an administrative agency in interpreting its own regulations is not so all encompassing as to sanction an interpretation at odds with the plain language used, I must dissent.
It is the position of the Mississippi Real Estate Commission (MREC) that defendant Five-Star violated certain rules and regulations which are applicable to the seller of "time-share" plans. The MREC has been statutorily authorized to regulate the "sale of timesharing and condominium properties." Miss. Code Ann. § 73-35-35 (Supp. 1991). There is no legislative definition for the term timesharing. Accordingly, MREC has adopted regulations defining the term.
Rule 47-1F of the Commission's rules and regulations provides:
"Time-sharing Plan" and "interval ownership" means any arrangement, plan, scheme or similar device; whether by *1158 membership, agreement, tenancy in common, sale, lease, deed rental agreement, license, right to sue agreement, or by any other means, whereby a purchaser receives a right to use accommodations for a specific period of time. (Emphasis added).
Rule 47-1A defines "accommodations" as follows:
"Accommodations" means a structure, service improvement, facility, apartment, condominium or cooperative unit, cabin, lodge, hotel or motel room, or any other private or commercial structure which is situated on real property and designed for occupancy by one or more individuals. (Emphasis added).
In order for the regulations of the Mississippi Real Estate Commission to be applicable, the campground property must fall within the definitions of "time-sharing plan" and "accommodations" set forth above. Neither "structure" nor "service improvement" nor "specific period of time" is further defined in MREC's rules or regulations.
The chancellor, who visited the site and noted only water and electrical hookups on otherwise bare land, found that there was not a structure or any other improvement "designed for occupancy." That court also found that the arrangement herein involved does not contemplate occupancy for a "specified period of time." I agree.
No where in the MREC's rule is "campground" mentioned. However, numerous other types of accommodations are included in the definition: apartment, condominium, cabin, lodge, and hotel or motel room. All of the types of accommodations which are listed in Rule 47-1A are structures which are designed for occupancy. It is clear that a campground site is not a structure and is not designed for occupancy. The campground site is merely an area which may be utilized by the members for parking their campers or other recreational vehicles. There is simply no physical structure or facility which may be occupied by one or more individuals.
Even if the term "service improvement" is deemed met by the utility hook-ups and is also deemed to be an alternative to "structure" within the rule the arrangement in question clearly fails the "specified period of time" requirement. Rule 47-1A specifically provides that a purchaser of a time-sharing plan receives a right to use accommodations "for a specific period of time." Five Star's rule provides that members may stay at the campground site for up to fourteen consecutive days, they must then leave and wait for a period of seven days before returning to that particular Five Star resort. It is clear from Five Star's rule that a member could continue this cycle indefinitely. Also, the member may choose which fourteen-day period of the year he or she wishes to visit the campground site. The member is not limited to any particular or specific season, month, or even week. The member simply must call one of the Five Star resorts and make a reservation. And the member is not limited to fourteen days a year but may continue the fourteen-day seven-day cycle indefinitely.
As noted by the wise chancellor, the MREC may not be permitted to construe what are clear non-time specific periods as specific. In the words of the chancellor,
[t]hey have to be consistent with what they are doing and to say that a person engaging in a timesharing plan purchased for a specific period of time means that we then have to go beyond that and say that it can mean nonspecific periods of time, I think the commission has painted itself into a corner by the way they have defined these if they mean to regulate campgrounds.
A similar situation was presented in the case of All Seasons Resorts, Inc. v. Department of Business Regulation, 455 So.2d 544 (Fla. Dist. Ct. App. 1984). In All Seasons, All Seasons Resorts, Inc. offered memberships for sale at a Florida campground. The purchaser received a license for nonexclusive use of a nonspecified parking site for a recreational vehicle, camper or tent in any of All Seasons' campgrounds. A member's stay was limited to fourteen days at any time, after which the member was prohibited from visiting any *1159 All Seasons campground for seven days. As in the case before this Court, the member could continue this fourteen-day seven-day cycle indefinitely.
The Florida Department of Business Regulation, Division of Land Sales, Condominiums and Mobile Homes informed All Seasons that it must comply with Florida statutes governing the sale of real estate time share plans. All Seasons petitioned for a declaratory statement declaring that the statutes didn't apply to the campgrounds. The Division issued a statement finding that the statutes were applicable to All Seasons.
Florida's statutes governing time-share plans are very similar to those involved in the case before this Court. Time share plan is defined in Fla. Stat. Ann. § 721.05(28) as "any arrangement, plan, scheme, or similar device ... whereby a purchaser, in exchange for a consideration, receives ownership rights in or a right to use accommodations ... for a period of time less than a full year in any given period of more than 3 years." Fla. Stat. Ann. § 721.05(1) at the time of the declaratory statement defined accommodation as "any apartment, condominium or cooperative unit, cabin, lodge, or hotel or motel room or any other private or commercial structure which ... is designed for occupancy by one or more individuals." (Emphasis added).
On appeal, the District Court of Appeal of Florida, First District, found that the term accommodation did not include the campground sites offered by All Seasons. The Florida court noted that an accommodation is a structure situated on real property and "bare land is not a structure." The court also stated the Division had overlooked the Florida Legislature's intention which was indicated by the specific types of accommodations listed in Fla. Stat. Ann. § 721.05(1). This list failed to include campground as does the list in Rule 47-1A.
The court in All Seasons also found that time share periods were not being sold by All Seasons. The court found that campground members did not purchase the right to use the campground for a single period of time within a year but could stay at any All Seasons campground "at any time of the year they choose for as many stays as can be accommodated within that year by the 14-day on, 7-day off requirement."
Virtually the same situation is presented in this case before the Court. The campground site at issue doesn't appear to be an "accommodation" nor a "time-sharing plan." The chancellor's decision that the Mississippi Real Estate Commission's Rules are inapplicable to the campground property should be affirmed.
NOTES
[1] Technically and procedurally, the court granted a dismissal on the merits pursuant to Miss. R.Civ.P. 41(b) since this was a non-jury trial. A directed verdict under Miss.R.Civ.P. 50 is limited in use to "cases tried to a jury with a power to return a binding verdict." Comment, Miss. R.Civ.P. 50; Mitchell v. Rawls, 493 So.2d 361, 362 (Miss. 1986).
[2] Cooper and Smith did not appeal the Chancery Court decision.