# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01537-SCT

*DOUBLE J FARMLANDS, INC.*

*v.*

*PARADISE BAPTIST CHURCH, ET AL. AND
BETTY DOWNS TYLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2007 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | TATE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | PARKER HAYS STILL |
| | REBECCA S. THOMPSON |
| ATTORNEY FOR APPELLEE: | MILDRED J. LESURE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 12/04/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1.     Petitioner's adverse-possession claim to approximately six-and-a-half acres (the "6.5-Acre Tract") was denied by the Tate County Chancery Court, which held that the plaintiffs failed to meet their burden of proving their possession was "hostile."  We affirm.

### BACKGROUND FACTS AND PROCEEDINGS

¶2.     In 1961, Mrs. Omega Thomas conveyed fifty acres of property[1] (the "50-Acre Tract") to Harvey E. Tyler and his wife, Betty Downs Tyler.  In 2005, after Mr. Tyler's death, Mrs.

---

[1]The disputed 6.5-Acre Tract in dispute is part of this fifty-acre tract of land.

Tyler conveyed by warranty deed the 50-Acre Tract to the Paradise Baptist Church ("Paradise").

¶3. In 1995, Joyce Roseborough White conveyed a large tract of property (the "Double J Property") to Appellant Double J Farmlands. A portion of the Double J Property abutted the 50-Acre Tract. Although the deed conveying the Double J Property specifically excluded the 50-Acre Tract,[2] a fence around the Double J Property included the part of the 50-Acre Tract which is in dispute, that is, the 6.5-Acre Tract.

¶4. In 2005, as part of its acquisition of the 50-Acre Tract from Mrs. Tyler, Paradise ordered a survey. The survey, which was completed in September 2005, revealed that six-and-a-half acres of its property (the 6.5-Acre Tract) was inside Double J's fence. Double J was aware of both the survey and Paradise's application for a change in zoning of the 6.5-Acre Tract. However, it took no action against Paradise or the surveyor until February 2006, when it filed suit against Paradise to quiet and confirm title to the 6.5-Acre Tract by adverse possession. Paradise answered and filed a third-party complaint against Betty Tyler for breach of the Warranty Deed.

---

[2]The Warranty Deed of Exchange stated in pertinent part:

FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00), cash in hand paid and in further consideration of a certain exchange of stock of the Grantee to me, the receipt and sufficiency of all of which are hereby acknowledged, I, JOYCE ROSEBOROUGH WHITE, do hereby sell, convey, warrant, swap, exchange and deliver unto DOUBLE J. FARMLANDS, INC., an Arkansas corporation, the following described real property located and situated in Tate County, Mississippi, and more particularly described as follows, to-wit:

TRACT I

All, less the South 50 acres of the East Half of the Northeast Quarter, and less 27 acres in the NE corner of the Northeast Quarter of the Section 35, Township 5, Range B West, Tate County, Mississippi.

¶5. Double J moved for summary judgment on its adverse possession claim to the 6.5-Acre Tract. In response, Paradise submitted an affidavit by Betty Tyler, which stated in relevant part:

4.     My husband Harvey Tyler, deceased, maintained and leased the property and at other times farmed the land. It has always been my understanding the subject property belonged to me and my husband.

5.     Sometimes, I accompanied him to check on the property which included the 6.5 acres.

6.     I nor my husband ever recognized or acquiesced that the fence represented a boundary line separating our property from the adjacent landowners. Nor did we know that Double J Farms claimed this 6.5 acres as their own over and against us.

¶6. Based, in part, on Mrs. Tyler's affidavit, the chancellor denied Double J's motion for summary judgement. After deposing Mrs. Tyler, Double J – claiming the affidavit was fraudulent and submitted in bad faith – filed a motion seeking reconsideration of its summary judgment motion. The chancellor denied the motion and proceeded with a bench trial.

¶7. Johnny H. White, vice-president and stockholder of Double J, testified that he believed the property deeded to Double J in 1995 included the six-and-a-half acres and, even if the belief was erroneous, because the six-and-a-half acres was within their fence, Double J owned it and it was, in fact, Double J's property. He further testified that the property had been used by his company or its predecessors in title for more than fifty years, and that he believed Double J had paid taxes on the six-and-a-half acres for many years. He admitted that Double J did not maintain the fence, but claimed that Double J depended on its lessee, Herbert Whalen, to maintain it. He further testified he was aware the fence had been replaced and maintained by the Tyler family.

3

¶8.    Herbert Whalen, Double J's lessee for more than twenty years, testified he believed the 6.5-Acre Tract had always been a part of his lease and he had been raising his cattle on that tract. Moreover, he treated the fence as a boundary line and, until the survey began in 2005, he was under the impression that Double J or its predecessors in title owned the 6.5-Acre Tract. He also testified that he maintained the fence on his side.

¶9.    Walter McKellar, a long-time neighbor, testified it was his general understanding that all of the property behind the fence belonged to Double J or its predecessors in title. He admitted, however, that he was not familiar with the particular 6.5-Acre Tract in controversy.

¶10.    Double J called two adverse witnesses – Mrs. Tyler, the counter-defendant, and her son, Jody Tyler. However, the chancellor discounted both their testimonies, finding that Mrs. Tyler was "an elderly lady, who was experiencing mental problems as her testimony was wrought with contradictions and was unreliable"; and that Jody Tyler's "relationship with his mother has impaired his judgment," and that his testimony was indicative of his obvious bias to act against his mother's interests.[3]

¶11.    At the conclusion of Double J's case-in-chief, Paradise moved for dismissal pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure. The chancellor granted the motion, finding that the property deeded to Double J specifically excluded the 50-Acre Tract of land owned by the Tylers which, in turn, included the 6.5-Acre Tract. The chancellor gave weight to the fact that the fence had been maintained by the Tylers. He also found it

_____

[3]Jody Tyler had been enjoined by Justice Court Judge Embry from "having any contact" with Betty Tyler. Moreover, he admittedly sought out Mr. White in order to help him obtain title to the property.

4

significant that Double J did nothing to eject or evict Paradise or its surveyors. Accordingly, the chancellor held that Double J had failed to prove that its possession of the 6.5-Acre Tract was hostile – a necessary element of an adverse possession claim – and that Paradise's motion to dismiss should be granted. Aggrieved, Double J timely perfected its appeal.

**ANALYSIS**

¶12. A motion for directed verdict granted by the court, sitting without a jury, is procedurally a dismissal on the merits under Mississippi Rule of Civil Procedure 41(b). *Miss. Real Estate Comm'n v. Geico Fin. Servs., Inc.*, 602 So. 2d 1155 (Miss. 1992). This Court applies the substantial evidence/manifest error standard to an appeal of a grant or denial of a motion to dismiss pursuant to Rule 41(b). *Stewart v. Merchants Nat'l Bank*, 700 So. 2d 255, 258 (Miss. 1997) (citing *Century 21 Deep South Properties, Ltd. v. Corson*, 612 So. 2d 359, 369 (Miss. 1992)). In considering a motion to dismiss, the trial judge should consider "the evidence fairly, as distinguished from in the light most favorable to the [nonmovant]," and should dismiss the case if it would find for the movant. *Id*. On the other hand, if the judge would be obliged to find for the nonmovant if the nonmovant's evidence were all the evidence offered in the case, then the motion to dismiss must be denied. *Id*.

¶13. Moreover, we must defer to a chancery court's findings of fact unless they are manifestly wrong or clearly erroneous. *Breeden v. Tucker*, 533 So. 2d 1108 (Miss. 1988). After careful review of the record, we are unable to say the chancellor's factual findings were manifestly wrong. We therefore must adopt them in applying the law to this case.

¶14. To acquire property by adverse possession, a claimant must show that its possession of the property was: (1) open, notorious, and visible; (2) hostile; (3) under claim of

5

ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for a period of ten years. ***Biddix v. McConnell***, 911 So. 2d 468, 475 (Miss. 2005) (citing ***Sharp v. White***, 749 So. 2d 41, 42 (Miss. 1999)). *See also* Miss. Code Ann. § 15-1-13 (Rev. 2003); ***Roy v. Kayser***, 501 So. 2d 1110, 1111 (Miss. 1987). Furthermore, the claimant has the burden of proving all six elements by clear and convincing evidence. ***Thornhill v. Caroline Hunt Trust Estate***, 594 So. 2d 1150, 1153 (1992) (citing ***West v. Brewer***, 579 So. 2d 1261, 1262 (Miss. 1991)). The chancellor found that Double J failed to show that its occupation of the 6.5-Acre Tract was hostile.

¶15.    The mere presence of a fence, without more, has never been sufficient to sustain a claim of adverse possession. As this Court clearly has stated:

> When a fence or hedge row is relied upon to delineate the boundary of an adverse claim, the applicable rule is whether the enclosure like other acts of possession is sufficient to fly the flag over the land and put the true owners on *notice* that his land is held by an adverse claim of ownership.

***Snowden & McSweeney Co. v. Hanley***, 16 So. 2d 24, 25 (Miss. 1943) (emphasis added). In other words, the adverse possessor (in this case, Double J) must present some proof that its occupation of the record owner's property was hostile, and that the record owner – aware of the adverse possessor's hostile occupation – took no action to prevent adverse possession. The chancellor found no evidence of the required hostility by Double J or its predecessors.

¶16.    To be hostile, in an adverse-possession sense, is to take some action adverse to the interest of the true owner. *See* ***Magee v. Magee***, 37 Miss. 138, 153 (1859) ("The actual or hostile occupation of land necessary to constitute adverse possession requires a corporeal occupation, accompanied by a manifest intention to hold and continue to hold the property

6

against the claim of all other persons, and adverse to the rights of the true owner."). Here, we have the true owner, i.e., the Tylers, who built a fence on their property and, as a result, fenced the 6.5-Acre Tract out of their property. It was not Double J who fenced the disputed property in, as noted by the chancellor. In fact, Double J took no action which was adverse to the Tylers' interest in the 6.5-Acre Tract. The use of the tract as a grazing ground for the lessee Whalen's cows does not amount to a hostile action.

¶17. The record also includes proof that the Tylers paid taxes on the 6.5-Acre Tract. Moreover, as the chancellor pointed out, Double J knew the surveyors were on the 6.5-Acre Tract conducting the survey, but took no action to eject them. Thus, under a limited standard of review, we are unable to say the chancellor's finding was manifestly wrong or an abuse of discretion.

## CONCLUSION

¶18. The element of hostility is not subject to a single, universal definition. It may manifest differently from one claim of adverse possession to the next. Double J mistakenly believed its own deed included the 6.5-Acre Tract, and consequently saw no need to manifest hostility in occupying the property. Finding substantial evidence to support the chancellor's decision, and further finding the chancellor did not commit manifest error in ruling that Double J had failed to prove one of the necessary elements of its claim of adverse possession, we affirm the judgment of the Chancery Court of Tate County.

¶19. **AFFIRMED**.

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LAMAR, J., NOT PARTICIPATING.**