523 So.2d 961 (1988)
MERCHANTS NATIONAL BANK, VICKSBURG, Mississippi
v.
Larry B. STEWART, Harry A. Stewart, Sr., and Betty Stewart.
No. 57392.
Supreme Court of Mississippi.
March 16, 1988.
Rehearing Denied May 11, 1988.
*962 Edley H. Jones, III, Ward, Martin & Terry, Vicksburg, for appellant.
Phillip M. Nelson, Kirk & Nelson, Ridgeland, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal from an adjudication of civil contempt arises from the prior settlement of an action to enjoin a foreclosure and the failure of the secured party to carry out the agreed and court ordered settlement. The judgment appealed from amounts to little more than a directive that the secured party bank do what it has been ordered to do, albeit a daily penalty is assessed for future non-compliance. As in all civil contempt matters, of course, the party in contempt metaphorically has the keys to the jailhouse door in his pocket.
The adjudication below was within the law and the evidence. We affirm.

II.
Harry A. Stewart, Sr., and Betty Stewart, Plaintiffs below and Appellees here, farmed in Madison County, Mississippi, and financed those operations by a history of annual loans with Merchants National Bank of Vicksburg, Mississippi (MNB). Increasingly, the Stewarts had problems servicing their debt, and in January of 1983 MNB refused to extend them further credit under the then present circumstances.
Harry Stewart devised a plan for the 1983 crop year that would place the farming operations under the control of his son and son-in-law. They would obtain new loans and he would guarantee their debt. In February of 1983, the Stewarts divided their farm land in Madison County into equal shares. They conveyed one-half to their son, Harry A. Stewart, Jr., and the other half to their son-in-law, Eddie Ray Ellis. Stewart, Jr., and Ellis paid for the land each acquired as follows: First, on May 23, 1983, each executed a note in favor of the Stewarts in the sum of $170,000 payable January 1, 1984. Each such note was secured by a purchase money deed of trust on the property each had acquired. In addition, Stewart, Jr., and Eddie Ellis each borrowed $500,000 from MNB in the form of Farmer's Home Administration guaranteed loans. The $500,000 FmHA guaranteed loans and deeds of trust were subordinate in right to the lien of the $170,000 deeds of trust in favor of the Stewarts.
Stewart, Jr., and Ellis each then obtained crop production loans. More precisely, MNB extended a line of credit to Stewart, Jr., and Ellis in the amount of $170,000 each. Stewart, Jr., and Ellis, of course, gave their notes to the bank in these amounts, secured by a security interest in the crops. The Stewarts then executed and delivered to MNB a continuing guaranty and hypothecation agreement guaranteeing performance by Stewart, Jr., and Ellis of their obligations under the line of credit. To secure their guaranty obligations, the Stewarts assigned to MNB their notes from Stewart, Jr., and Ellis and their rights under the $170,000 deeds of trust securing each.
As fate would have it, the 1983 farming operations conducted by Stewart, Jr., and Ellis were unsuccessful. All loans fell into default. W.C. Way, Trustee, in the two $170,000 deeds of trust of May 23, 1983, commenced foreclosure proceedings with April 27, 1984, designated as the date of foreclosure sale. On April 27, 1984, MNB, as the holder of the assignment of these two deeds of trust, filed a substitution of trustee appointing and substituting C.E. *963 Sorey, II, as trustee instead of W.C. Way. Way, however, continued with the foreclosure, in fact conducted the sale on April 27, 1984, and on April 30, 1984, executed and delivered two trustee's deeds to Larry B. Stewart. Each trustee's deed recited a consideration of $112,500.
Notwithstanding, C.E. Sorey, II, as substituted trustee, on April 30, 1984, commenced foreclosure proceedings on the same two deeds of trust. This second foreclosure sale was scheduled for May 25, 1984.
On May 18, 1984, Larry B. Stewart, taking the position that he had acquired good title to the properties, brought an action in the Chancery Court of Madison County to enjoin MNB and Sorey from proceeding with this second foreclosure sale. The Chancery Court entered a temporary restraining order on that same date followed by a preliminary injunction on May 22, 1984, and the MNB/Sorey foreclosure sale scheduled for May 25 was effectively enjoined. The Stewarts were joined as additional plaintiffs in this action on July 27, 1984. Thereupon a complete settlement of the action was made and an agreed order of dismissal was entered by the Chancery Court on the same day, July 27, 1984.
The pertinent portions of the Agreed Order provide that:
(1) The foreclosure held on April 27, 1984, by W.C. Way is null and void;
(2) MNB shall advance $34,200 to the Stewarts upon entry of the Agreed Order as "an advancement of the equity held by" the Stewarts, "by virtue of an equitable interest in the first deed of trust";
(3) MNB shall further advance $34,200 "as an advancement of the equity held by" the Stewarts "by virtue of an equitable interest in the first deed of trust" on the date of the foreclosure sale to be held by MNB under the deed of trust entered into by Harry Stewart, Jr.;
(4) The "total aggregate advance" to the Stewarts "against their equity in said deeds of trust" shall be $68,400;
(5) MNB shall foreclosure on the first two deeds of trust as soon as possible;
(6) Sorey and Phillip Nelson shall be substituted as co-trustees under the first two deeds of trust;
(7) The Stewarts have the right to pursue claims against MNB, not a part of this litigation; and
(8) The Stewarts may pursue "their claims/counterclaim in a principal amount not to exceed $152,000 plus interest on $340,000 from May 23, 1983, to date of foreclosure exclusive of prejudgment interest, damages, and attorney fees, if any."
Pursuant to the Agreed Order the Stewarts received the first $34,200, and Sorey and Nelson were substituted as co-trustees of the first deeds of trust. The plan was temporarily interdicted as Stewart, Jr., and Ellis filed separate bankruptcy petitions in the United States Bankruptcy Court for the Southern District of Mississippi. In consequence, the foreclosure actions were stayed. The bankruptcy stay was lifted in early March of 1985. On March 14, 1985, MNB began foreclosing the second deeds of trust, those executed by Stewart, Jr., and Ellis to secure the FmHA guaranteed loans made by MNB. No foreclosure proceedings were commenced on the May 23, 1983, first deeds of trust, which MNB held by assignment, nor have any foreclosure proceedings been instituted since.
On March 18, 1985, Nelson, as the Stewarts' attorney, wrote the following letter to Jeffrey King (King), who at that time was representing MNB's interest:
It has come to my attention that Merchants National Bank, ..., is currently running a foreclosure against the Harry Stewart, Jr. and Eddie Ellis properties in violation of and contrary to the Agreed Order entered in the above styled and numbered cause on July 27, 1984.
At this time I have no particular disagreement with the foreclosure occurring; however, I must have in writing your agreement on behalf of Merchants National Bank that the sum of $34,200 will be tendered to myself and Ronnie Kirk, as attorneys of record for Mr. and Mrs. Harry Stewart, Sr., at the time the *964 contemplated foreclosures occur on or about noon, April 8, 1985.
If you are unable to enter into this agreement in writing on behalf of Merchants National Bank, then I shall have no choice but to immediately seek contempt citations against Merchants National Bank through the Chancery Court of Madison County and to secure a temporary restraining order to prevent the occurrence of the subject foreclosures in flagrant violation of the Court's order.
I trust that it was an inadvertent oversight of Merchant's National Bank that it has proceeded with these foreclosures in violation of the Agreed Order and that there will be no problem on your part in making this requested agreement on their behalf by return mail.
On March 26, 1985, King responded as follows:
In response to your letter of March 18, 1985, please be advised that Merchants National Bank intends to abide by its agreement to pay to Mr. and Mrs. Harry Stewart and attorneys the sum of $34,200 at the time of the foreclosure. If you have any further questions, please let me know.
On October 24, 1985, Harry A. Stewart, Sr., and Betty Stewart, the Appellees/Plaintiffs-below, filed, in the Chancery Court of Madison County, their motion for citation for contempt and for related matters against Merchants National Bank, the Appellant/Defendant-below, alleging that Merchants National Bank had not initiated, and refused to initiate, foreclosure proceedings on two deeds of trust, representing a senior lien, as required by an Agreed Order of Dismissal entered on July 27, 1984. On January 27, 1986, the Chancery Court entered its order finding Merchants National Bank in civil contempt for failing to comply with the July 27, 1984, Agreed Order but imposed no immediate sanction. Instead, the court directed MNB to foreclose, by February 21, 1986, on the deeds of trust which were the subject of the Agreed Order, or pay $100 per day from February 21, 1986, until it complied with the Agreed Order. From this order, Merchants National Bank appeals.

III.
MNB's first two assignments of error may be considered together. First, MNB argues that the March 1985 letters effected a modification of the Agreed Order. Second, MNB makes the related claim that the Stewarts were estopped from asserting a violation of the Agreed Order in that they had induced MNB to believe that a modification of the Agreed Order had occurred. The Chancery Court, it might be noted, held in its January 17, 1986, opinion that "subsequent negotiations did not alter the Agreed Order entered in this cause on July 27, 1984."
Without doubt, an agreed order or consent decree such as that with which we are here concerned may be altered by agreement of the parties. See Norris v. Norris, 498 So.2d 809, 811 (Miss. 1986); cf. Bornaschella v. Orcutt, 418 So.2d 768, 774 (Miss. 1982). Beyond that, there is no denying that there are circumstances where one party to a consent decree may be estopped from asserting non-compliance by the other by virtue of subsequent conduct. These homilies do not carry us far, for there is nothing in the March 1985 letters, and particularly the March 1985 letter from the Stewart's attorney, which would constitute an agreement that MNB not foreclose on the first deeds of trust. At most the letters constitute a waiver of any objection to foreclosure on the second deeds of trust, the ones securing the FmHA guaranteed loans.
The Agreed Order of July 27, 1984, directed that MNB foreclose upon the two May 23, 1983, deeds of trust  the ones executed by Stewart, Jr., and Ellis  "as soon as possible." In its opinion of January 17, 1986, the Chancery Court held that the Agreed Order so provided and found that MNB had failed to comply. MNB does not suggest otherwise. Indeed, it is uncontradicted in the record that MNB has not foreclosed the May 23 deeds of trust sooner or later or at any other time. MNB's argument is not that it has complied *965 with the order but that the order has been modified. They point to letter communications between the attorneys in March of 1985.
We hold that the provision of the order of July 27, 1984, that MNB foreclose upon the May 23 deeds of trust "as soon as possible" has not been superseded or modified by any agreement between the parties, nor have the Stewarts engaged in any conduct either personally or through authorized representatives which would estop them from asserting a violation of the Agreed Order. MNB's Assignments of Error Nos. 1 and 2 are denied.

IV.
Alternatively, MNB urges that, in practical effect, it already has foreclosed on the first deeds of trust. MNB points to the fact that it was the holder of the FmHA guaranteed second deeds of trust and, via the assignments of the Stewarts, it was the holder of the first deeds of trust. On April 8, 1985, MNB foreclosed the FmHA guaranteed second deeds of trust. MNB bid on the property at these sales and tells us that its bid was calculated upon the premise that it owned completely the notes represented by all deeds of trust. Upon sale of the subject property to a third party, proceeds were credited accordingly with MNB sustaining a loss on all loans.
Legalistically, we are told that the April 8, 1985, foreclosure of the second deeds of trust achieved a merger of MNB's rights under the first deed of trust. Had the first deeds of trust been held by third parties, foreclosure of the second deed of trust would have required that MNB pay off and extinguish the first deed of trust in order to obtain clear title. Here, we are told, this would merely be taking money from one pocket and putting it in the other as MNB held both deeds of trust. Because of the metaphysics thus accomplished, MNB tells us that it is unable to foreclose the first deeds of trust and cites to the rule that one cannot be held in contempt for performance of the impossible.
MNB argues merger of title is a recognized principle in some states. In order to have merger, of course, it is necessary that first and second deeds of trust be owned entirely by the same party. See Board of Trustees of General Retirement System v. Ren-Cen Indoor Tennis and Racquet Club, 145 Mich. App. 318, 377 N.W.2d 432 (1985); Nelson & Whitman, Land Transactions and Finance, 249-52 (2d ed. 1988); Nelson & Whitman, Real Estate Finance Law, 467-68 (1985). See also International Harvester v. Peoples Bank & Trust, 402 So.2d 856 (Miss. 1981). The Stewarts argue that they obtained an equitable interest in the first deeds of trust, that the assignment of the first deeds of trust to MNB was a collateral assignment and not an assignment absolute; and that a fair and lawful foreclosure may well leave an equity in the property which would be theirs. The course MNB has embarked upon, the Stewarts say, would divest them of any equity in the first deeds of trust.
The quick answer is found in the law of civil contempt. If there be merit in MNB's merger theory, it was incumbent upon MNB to present the matter to the Chancery Court and obtain relief from the injunction. Until there be a modification of the Agreed Order of July 27, 1984, MNB has no option but to comply. Howat v. Kansas, 258 U.S. 181, 189-90, 42 S.Ct. 277, 280-81, 66 L.Ed. 550, 559 (1922); Gadson v. Gadson, 434 So.2d 1345, 1348-49 (Miss. 1983) (concurring opinion).
MNB's course of conduct amounts to little more than blatant self help. MNB was directed unequivocally to foreclose the two first deeds of trust "as soon as possible." This it has neglected to do and for this failure the Chancery Court has adjudged MNB in civil contempt. That MNB has an argument, i.e., merger and extinguishment, which might have been persuasive before the Chancery Court as grounds for modification of the Agreed Order in no way constitutes grounds for our reversal of the judgment that MNB is in civil contempt.
The assignment of error is without merit and is denied.

V.
We affirm the judgment of the Chancery Court in all respects except one. MNB *966 shall be liable for the $100 per day penalty only if it fails to commence foreclosure proceedings on or before the tenth day following issuance of the mandate herein.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.