## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 94-CT-00231-SCT

*HARRY A. STEWART, SR. AND BETTY D. STEWART*

*v.*

*MERCHANTS NATIONAL BANK, VICKSBURG, MISSISSIPPI*

### CONSOLIDATED WITH

### 90-CA-00410-SCT

*MERCHANTS NATIONAL BANK, VICKSBURG, MISSISSIPPI*

*v.*

*HARRY A. STEWART, SR. AND BETTY D. STEWART*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/93 |
| TRIAL JUDGE: | HON. RAY HILLMAN MONTGOMERY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| FOR APPELLANTS: | JOHN W. CHRISTOPHER |
| FOR APPELLEE: | JOHN C. WHEELESS, JR. |
| | KENNETH B. RECTOR |
| | DONALD A. MCGRAW, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED - 5/29/97 |
| MOTION FOR REHEARING FILED: | 6/12/97 |
| MANDATE ISSUED: | 8/29/97 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This matter comes before the Court, sitting en banc, after having granted Merchants National Banks's (Merchants) petition for writ of certiorari. The Chancery Court of Madison County, sitting

without a jury, entered an order of dismissal for Merchants at the conclusion of Harry A. Stewart, Sr., and Betty D. Stewart's (Stewarts) case in chief. On appeal, the Court of Appeals applied the standard of review applicable to a directed verdict and viewed the evidence in the light most favorable to the plaintiffs, giving the plaintiff the benefit of all reasonable favorable inferences, and reversed the chancellor's order of dismissal. We find that the Court of Appeals erred in reversing the judgment of the chancellor. Accordingly, we reverse and reinstate the judgment of the chancellor.

## STATEMENT OF THE CASE:

¶**2.** This case began when Harry Stewart and Betty Stewart, owners and farmers of approximately 900 acres of land in Madison County, Mississippi, experienced several bad crop years and mounting debt and Merchants National Bank, their primary financier, notified them that it could no longer carry their debt. The Stewarts and Merchants agreed that the farm should be sold. Thereafter the Stewarts divided the farm in half and initiated the process of selling it to their son and son-in-law, Stewart, Jr., and Ellis, respectively. As part of the agreement between Merchants and the Stewarts, Merchant assisted Stewart, Jr., and Ellis in securing a ninety percent guaranteed Farmers Home Administration Loan for the purchase of the farm and farm equipment.[1]

¶3. On May 23, 1983, the Stewarts sold the farm to Stewart, Jr., and Ellis, who each executed promissory notes in the amount of $ 170,000 in favor of the Stewarts, as the balance of the purchase price. Each note was secured by a first deed of trust and lien against each purchaser's half of the farm. Additionally, Stewart, Jr. and Ellis each borrowed the sum of $ 500,000 from Merchants to pay the balance of the purchase price of the farm and farming equipment. This debt for each buyer, was evidenced by a note in the amount of $200,000 and one in the sum of $300,000. These notes were secured by a second deed of trust in favor of Merchants. Also, pursuant to the lender's agreements, the repayment of these notes totaling one million dollars was ninety percent guaranteed by the FmHA. Additionally, on the same date, Stewart, Jr. and Ellis each executed $ 170,000 unsecured promissory notes to the bank as security for crop production and equipment loans. The Stewarts agreed to guarantee, through the execution of Hypothecation Agreements, the repayment of this indebtedness to the bank. As collateral, they assigned their first deeds of trust from Stewart, Jr. and Ellis, each in the amount of $ 170,000 to Merchants.

¶4. After the 1983 crop season, all of the loans were in a state of default and Merchants made a demand on Stewart, Jr., and Ellis for the payment of the loans. After the demands for payment were not made, the bank began the process of foreclosing on the real property and repossessing the equipment.

¶5. After two attempts at foreclosure, the first initiated by the Stewarts and the second by Merchants, the parties entered into an Agreed Order of Dismissal, on July 27, 1984. As part of the agreed order, the court ordered that the Stewarts be given $34,200 upon the entry of the order as an advancement of their equitable interest in the first deeds of trust; that Merchants advance an additional $34,200 to the Stewarts on the day of the subsequent foreclosure sale; that the Stewarts reserved the right to litigate over a remaining amount of equity of $152,000 in the deeds of trust; and that Merchants foreclose on the first deeds of trust executed by Stewart, Jr., and Ellis to the Stewarts and assigned by Stewarts to Merchants.

¶6. In the Spring of 1985, Merchants foreclosed on the second deeds of trust on the property. The

successful foreclosure bid by Merchants was $780,000. The Stewarts received the second installment of the equity advance ordered by the court. After that foreclosure, the Stewarts filed a complaint indicating that Merchants had not complied with the "Agreed Order of Dismissal."

¶7. The chancery court held Merchants in contempt for failing to foreclose on the first deeds of trust owned by the Stewarts pursuant to the agreed court order and Merchants was assessed a $100 per day penalty for future noncompliance. Merchants appealed to this Court.

¶**8.** As indicated above, the first appeal was initiated by Merchants after the Chancery Court of Madison County found Merchants in contempt for failing to abide by the agreed court order. This case decided by the Court on March 16, 1988, is cited as ***Merchants National Bank v. Stewart***, 523 So. 2d 961 (Miss. 1988). We affirmed the judgment of the Chancery Court of Madison County in all but one respect. We found that Merchants would only be liable for the $100 per day penalty if it failed to commence foreclosure proceedings on or before the tenth day following issuance of the mandate.

¶9. After this Court's decision was rendered on March 16, 1988, the Stewarts' deeds of trust were foreclosed and the $610,000 proceeds from the foreclosure sale were interpleaded.

¶10. In his November 8, 1988, Order Granting Interpleader, the chancellor ordered the parties to file their respective claims, counterclaims, defenses, offsets, credits, or other appropriate pleading within thirty days of the date of the entry of the order setting forth their respective alleged rights, claims, and counterclaims.

¶11. On January 25, 1989, the Stewarts filed their Answer and Claims of Harry A. Stewart and Betty Stewart to Complaint for Interpleader. The Stewarts requested ten million dollars in actual damages and thirty million dollars in punitive damages, along with attorneys' fees and rental fees. On August 15, 1989, the Stewarts filed a Motion for Bifurcated Trial wherein they asked the court to hear separately those matters pertaining to the rights, duties and liabilities of the respective parties and to subsequently hear those matters pertaining to actual damages and punitive damages. On August 15, 1989, the chancellor entered an Agreed Order for Bifurcated Trial.

¶12. After the parties presented their respective evidence on those matters pertaining to the rights, duties and liabilities of the parties, the chancery court rendered its opinion, wherein it held that the Stewarts were entitled to all proceeds of the July 15, 1988, foreclosure sale, less the costs of the foreclosure sale. The Stewarts were awarded $603,000.

¶13. Aggrieved by the chancellor's decision to award the Stewarts all of the proceeds from the foreclosure sale, Merchants filed its Notice of Appeal with this Court on April 11, 1990.

¶14. The second decision rendered by this Court was entered on April 1, 1992, as modified on denial of rehearing November 19, 1992, and is cited as ***Merchants National Bank v. Stewart***, 608 So. 2d 1120 (Miss. 1992). In that case, the Court reversed the judgment of the Chancery Court of Madison County's findings that the Stewarts were entitled to all of the proceeds of the foreclosure sale. The Court concluded that Merchants was entitled to $362,927.31, and that the Stewarts were entitled to the balance. Additionally, the Court ordered that the interest accrued on the proceeds be divided, on a pro rata basis, between the Stewarts and Merchants. On remand, the chancery court was ordered to

disburse the proceeds and accrued interests.

¶15. On January 25, 1993, the chancellor entered a Judgment for Distribution of Foreclosure Proceeds and Accrued Interest. The Stewarts received $281,103.33, which constituted their pro rata share plus accrued interest on the foreclosure proceeds.

¶16. An Agreed Order for Bifurcated Trial was entered on August 15, 1989. The chancellor set November 29, 1993, as the trial date for the damages portion of the trial. On November 18, 1993, Merchants filed its Answer and Response of Merchants National Bank to Answer and Claims of Harry A. Stewart and Betty Stewart to Complaint for Interpleader. Merchants asserted that the relief to which the Stewarts were entitled had already been granted; that all of the issues were litigated and decided in the court's final judgment of January 27, 1986, and that all other matters, which could properly have been raised and determined therein, had been. Merchants affirmatively pled the defense of res judicata.

¶17. The trial on damages commenced on November 29, 1993. During their case-in-chief, the Stewarts alleged that Merchants' failure to foreclose on the first deed of trust, and its subsequent citation for contempt evidenced that Merchants acted in bad faith. At the conclusion of the Stewarts' case, the chancellor sustained Merchants' Motion to Dismiss.

¶18. Aggrieved that the lower court sustained the motion to dismiss, the Stewarts filed an appeal to this Court and the case was assigned to the Court of Appeals. The majority of the Court of Appeals determined that based on the standard of review for a directed verdict, the evidence could have supported a verdict for the Stewarts' damages claim, and that the directed verdict should not have been granted. The Court of Appeals reversed the judgment of the chancery court and ordered a new trial. It is from that decision that we granted Merchants' petition for a writ of certiorari.

**Analysis**

**A.**

**Standard of Review**

¶19. The standard of review applicable on motion to dismiss under Rule 41(b) is different that applicable to a motion for a directed verdict. *Century 21 Deep S. Properties, LTD. v. Corson*, 612 So. 2d 359 (Miss. 1992)*; Real Estate Comm'n v. Geico Fin. Serv.*, 602 So. 2d 1155 (Miss. 1992); *Mitchell v. Rawls*, 493 So. 2d at 362-63; *Davis v. Clement*, 468 So. 2d 58, 61-62 (Miss. 1985). In considering a motion to dismiss, the judge should consider *"the evidence fairly*, as distinguished from in the light most favorable to the plaintiff," and the judge should dismiss the case if it would find for the defendant. *Corson*, 612 So. 2d at 369 (emphasis added). "The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." *Id.* (citations omitted). "This Court applies the substantial evidence/manifest error standards to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41(b)." *Id.* (citations omitted).

**B.**

¶20. Merchants contends that the Court of Appeals applied an incorrect standard of review of the

lower court's decision in that the Court of Appeals applied the standard of review applicable to the granting of a directed verdict in a jury case, rather than the standard of review applicable to a case before the trial judge sitting without a jury. Merchants explains that since this was a non-jury trial, the chancery court properly granted a dismissal on the merits pursuant to M.R.C.P. 41(b), and not a directed verdict under M.R.C.P. 50.

¶21. A review of the proceedings below indicates that at the close of the Stewarts' case, Merchants moved for a dismissal of the case. After the parties' argument on the motion to dismiss, the chancellor stated:

> The Court is of the opinion based upon the evidence and the testimony presented that the Motion to Dismiss is well taken and is hereby sustained, based primarily on the testimony of the Plaintiff, Harry A. Stewart, Sr., on direct examination when asked, "When did his financial problems begin," and his answer was: "When he guaranteed the loans to the boys." And so for that reason, based on the evidence and testimony, the Court is going to sustain the Motion to Dismiss.

¶22. The Order of Dismissal stated "having heard testimony in the matter and having considered the *Motion to Direct a Verdict* for the Defendant and Dismiss the Case with Prejudice made by the Defendant at the close of the Plaintiff's case, [the court] finds that the Motion is well taken and should be granted." (emphasis added).

¶23. The Court of Appeals erroneously determined that the lower court had granted a directed verdict for Merchants. The record clearly indicates that Merchants argued that the case should be dismissed and that the lower sustained Merchants' motion to dismiss. Having erroneously determined that the chancery court had *directed a verdict* for Merchants, the Court of Appeals held that the lower court should have viewed the evidence in the light most favorable to the Stewarts and denied the motion. The Court of Appeals explained that in directing a verdict for Merchants at the close of the Stewarts' case, it appeared that the lower court decided that the Stewarts did not suffer any damages from the fact that Merchants had failed to foreclose on the appropriate deeds of trust at the appropriate time. The court stated that the fact remains, however, that Merchants did not foreclose on the first deed of trust, in which the Stewarts had an interest in 1988, until five years after the deed should have been foreclosed. The court also stated that had the lower court not entered an order bifurcating the trial, the issue of damages would have been resolved in the previous case.

¶24. Clearly, the Court of Appeals' usage of an erroneous standard of review in its analysis rendered its decision in conflict with the prior cases of this Court which provide that the standard of review applicable on motion to dismiss under Rule 41(b) is distinguished from that applicable on motion for a directed verdict. Moreover, a fair reading of the evidence in the instant case would support a finding that Merchants was not liable to the Stewarts for damages.

## C.

¶25. Merchants next argues that the final order of the Madison County Chancery Court's ruling on the Motion for Citation for Contempt and for Related Matters, as affirmed by this Court, is res judicata as to the action for damages. Conversely, the Stewarts argue that their failure to get the equity from the first mortgage when the bank failed to foreclose on the first deed of trust as ordered

caused the damage they sustained.

¶26. A review of the proceedings below indicates that the Stewarts did not file the claim for damages at the trial level, nor in the subsequent appeal. Instead, they presented the claims for the first time during the subsequent interpleader action to determine the proper distribution of sales proceeds from the foreclosure.

¶27. We find that based on the record, the Stewarts should have raised the claims for damages in the contempt proceeding itself. Having failed to do so, they were precluded from raising such claims in the subsequent appeal. See *Dunaway v. W.H. Hopper & Assoc., Inc.*, 422 So. 2d 749, 751 (Miss. 1982).

¶28. For the foregoing reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the chancellor.

**¶29. REVERSED; REINSTATED**; **AND RENDERED**.

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**


McRAE, JUSTICE, DISSENTING:


¶30. I disagree with the majority's finding that the Court of Appeals erred in reversing the decision of the chancery court. The chancellor should have allowed the Stewarts to present additional evidence of damages. Further, because the Bank's ongoing actions have served to keep this case alive for more than a decade and the issue of damages was not litigated prior to the 1993 damages prong of the third chapter of this litigation, the Stewarts' claim for damages is not res judicata. Accordingly, I dissent.

¶31. In *Merchants National Bank v. Stewart*, 523 So. 2d 961 (Miss. 1988), we affirmed the chancery court's finding that the Bank was in contempt for failing to foreclose on the Stewarts' first deed of trust as required under the terms of the July, 1984 agreed court order. In their 1989 Complaint for Interpleader, the Stewarts sought actual damages, punitive damages, attorney fees and rental fees. Their motion to bifurcate the proceedings was granted in August, 1989.

¶32. After presenting evidence on matters of the parties' rights duties and liabilities, the chancellor entered an order finding that the Stewarts were entitled to all of the proceeds of the foreclosure sale, less costs. The Bank appealed that decision to this Court. In *Merchants National Bank v. Stewart,* 608 So. 2d 1120 (Miss. 1992), the chancellor's order was reversed, awarding the Bank $362, 927.31 and the balance to the Stewarts, with interest prorated between them. On remand, the chancellor was ordered to disburse the foreclosure sale proceeds and accrued interest. This, however, left unlitigated and unanswered the issues of punitive damages and attorney fees.

¶33. Trial on the issue of damages was set for November 29, 1993. Eleven days before the trial, the

Bank filed its answer, raising the defense of res judicata and asserting that the Stewarts had already received all of the relief to which they were entitled, that *all* issues had been litigated and decided, and that all matters which could have been raised, had been raised and determined. After the Stewarts presented their case that the Bank's failure to foreclose pursuant to the agreed order and the subsequent contempt citation were evidence of bad faith, the chancellor granted the Bank's motion to dismiss.

¶34. While the Court of Appeals employed the wrong standard of review by considering the chancellor's dismissal of the case as a directed verdict, this Court compounds the error by finding that a "fair reading" of the evidence would support a decision that the Bank was not liable to the Stewarts.

¶35. For the doctrine of res judicata to apply, four identities must be present: identity of the subject matter, identity of the cause of action, identity of the parties and identity of the quality or character of a person against whom a complaint is made. *Estate of Anderson v. Deposit Guaranty National Bank*, 674 So. 2d 1254, 1256 (Miss. 1996); *Aetna Casualty and Surety Co. v. Berry,* 669 So. 2d 56, 66-67 (Miss. 1996). Absent any of those identities, the defense of res judicata must fail. *Anderson,* 674 So. 2d at 1256. When all four identities are in place, the parties may not relitigate any issues that were previously litigated or which should have raised in the previous litigation. *Id.* While the requisite four identities were present in the case *sub judice*, the fact remains that neither the issue of punitive damages nor the issue of attorney fees and any other damages flowing from the Bank's actions were ever litigated prior to the second prong of the bifurcated trial in 1993. Thus, the Bank could not properly raise res judicata as an affirmative defense to the damages prong of these proceedings.

¶36. Even assuming *arguendo* that the issues of punitive damages and/or attorney fees had been addressed in any of the previous chapters of this case, that would not have precluded their consideration at the 1993 damages prong of the third trial. Any prior judgment would have addressed only the damages that had accrued to that particular point in time. Especially in cases such as this, where there have been numerous proceedings spanning more than a decade, a finding at some point that a defendant's actions were not sufficiently egregious to warrant the imposition of punitive damages does not forever thereafter immunize him from liability or provide him with the defense of res judicata. Whatever transpires throughout the course of litigation, regardless of the time and number of proceedings involved, remains subject to judicial scrutiny and review.

¶37. As to the majority's note in passing that a "fair reading" of the evidence would not support a finding that the Bank was liable to the Stewarts for damages, I further disagree. In addition to compensatory and punitive damages, the Stewarts also sought $100,000 damages and $10,000 attorney fees stemming from the Bank's unsuccessful appeal of its contempt citation in *Stewart I*. The Court of Appeals properly recognized that they should have been allowed to at least introduce evidence for the court's consideration, noting that "where a party's intentional misconduct causes the opposing to expend time and money needlessly, then attorney fees and expenses should be awarded to the wronged party." *Selleck v. S.F. Cockrell Trucking, Inc.* 517 So. 2d 558, 560 (Miss. 1987).

¶38. The Stewarts charged that the Bank acted in bad faith and as a result off its actions, they amassed some $106,000 in attorney fees. Again, the Court of Appeals decision acknowledged that

"[t]he fact is, however, that MNB only foreclosed on the first deed of trust in 1988, after a contempt citation, a supreme court judgment, and five years after the Stewarts initially attempted to foreclose on the first deeds of trust." A "fair reading" of this evidence, contrary to what the majority states, suggests that the Bank acted deliberately and in complete disregard of the Stewart's rights in failing to go through with the foreclosure, thus opening the door for punitive damages. By analogy, similar action or inaction by an insurer in failing to settle a claim would be sufficiently egregious to warrant imposition of punitive damages, even where there is technically no "bad faith" involved. *Valley Forge Insurance Co. v. Strickland,* 620 So. 2d 535, 540 (Miss. 1993). Moreover, we cannot lose sight of the fact that punitive damages are awarded not to compensate the plaintiffs for their damages, but to punish the wrongdoer and to serve as a deterrent. *Harvey-Latham Real Estate v. Underwriters at Lloyd's, London,* 574 So. 2d 13, 17 (Miss. 1990).

¶39. At the very least, the Stewarts were entitled to put on evidence of their attorney fees. We have held that that punitive damages are not a prerequisite for the award of attorney fees. *Aqua-Culture Technologies, Ltd. v. Holly,* 677 So. 2d 171, 185 (Miss. 1996). As we explained in *Aqua-Culture,* even where punitive damages are not appropriate,

> the trial judge may also validly find that the plaintiff should not have to suffer the expense of litigation forced upon it by the defendant's conduct, and therefore should determine that attorney fees should be awarded. A trial judge should be granted the flexibility to find that, although the actual awarding of punitive damages is inappropriate, the conduct of the defendant is so extreme and outrageous that he rather than the plaintiff, should bear the expense of litigation.

*Aqua-Culture,* 677 So. 2d at 184-185. The Bank's actions in the foreclosure proceedings and the protraction of this litigation clearly is the sort of behavior that would be characterized as so outrageous and extreme to, if nothing more, require it, and not the Stewarts, to bear the cost of litigation.

¶40. Accordingly, because the issue of damages was not res judicata and a "fair reading" of the facts of the case would entitle the Stewarts to attorney fees or even punitive damages, I respectfully dissent.

1. At the time of agreement, there were three deeds of trust outstanding on the Stewart farm. The first deed of trust was to the Ross Estate for approximately $400,000, the balance of the original purchase price of the property to the Stewarts. The second mortgage was executed in favor of the Small Business Association (SBA) and had a balance of $108,000.00. Merchants held the third deed of trust.