913 So.2d 351 (2005)
Sherri SANDERS, A Wrongful Death Heir and Beneficiary on behalf of Joshua Sanders, A Minor, and The Estate of Joshua Sanders, Deceased, Appellant
v.
RIVERBOAT CORPORATION OF MISSISSIPPI-VICKSBURG d/b/a Isle of Capri Casino and The City of Vicksburg, Mississippi, Appellees.
No. 2003-CA-00645-COA.
Court of Appeals of Mississippi.
April 19, 2005.
*352 Carroll Rhodes, Hazlehurst, attorney for appellant.
Victoria Hardy Rundlett, B. Stevens Hazard, Jackson, Gerald E. Braddock, Vicksburg, attorneys for appellees.
Before BRIDGES, P.J., GRIFFIS and ISHEE, JJ.
*353 GRIFFIS, J., for the Court.
¶ 1. Sherri Sanders, a wrongful death heir and beneficiary on behalf of Joshua Sanders, a minor, and the estate of Joshua Sanders, deceased filed this wrongful death action against the Riverboat Corporation of Mississippi-Vicksburg d/b/a Isle of Capri Casino (hereinafter "Isle of Capri") and the City of Vicksburg. At the end of the plaintiff's case-in-chief, the Warren County Circuit Court granted the Rule 41(b) motion to dismiss of the City of Vicksburg and the Isle of Capri. Finding no reversible error, we affirm the trial court's judgment.

FACTS
¶ 2. On June 29, 2001, Sherry Sanders was employed by the Isle of Capri Casino and was pregnant. Throughout that morning, Sanders experienced some minor pains. Sanders reported to work at 1:00 p.m. She was employed as a guest services representative. At approximately 5:05 p.m., while sitting at a computer, Sanders noticed blood on her shoes. At 5:15 p.m., Sanders told her co-worker Tracy Franklin to call her mother.
¶ 3. Sanders went into the restroom where her supervisors, Chandra Winters and Missy Lawrence, accompanied her. Lawrence told Sanders to lay on the floor. Sanders remained on the floor where she allegedly began "gushing" so much blood that Winters removed her pants and wrapped towels around her legs. Sanders remained in the restroom while a security officer called 911 at 5:59 p.m.
¶ 4. At approximately 6:05 p.m., the City of Vicksburg's emergency medical technician Willie Holt and paramedic Goodwin arrived at the Isle of Capri. The EMT and paramedic examined Sanders but did not see any bleeding. Sanders was placed on a stretcher and taken to the elevator. The elevator malfunctioned while Sanders was inside stopping between two floors. Sanders testified that she was trapped in the elevator for ten minutes before reaching the lower floor. She was taken immediately to the ambulance for further assessment. After another ten minutes, the ambulance departed the casino at 6:32 p.m.
¶ 5. At 6:44 p.m., Sanders arrived at the hospital complaining of severe vaginal bleeding and abdominal pain. Sanders was diagnosed to have had a placental abruption. Forty-one minutes after arriving at the hospital, Joshua was born at 7:25 p.m. Five weeks later, on August 7, 2001, Joshua died from complications due to the placental abruption.
¶ 6. A bench trial was held on October 14, 2002, in the Warren County Circuit Court. At the close of Sanders' case-in-chief, the City of Vicksburg moved for a directed verdict based upon Sanders' failure to show a breach in the standard of care owed her by the City. The Isle of Capri also moved for a directed verdict based upon Sanders' failure to prove causation between Joshua's death and the actions or inactions of the Isle of Capri. The trial court ruled that a directed verdict was not proper, but rather treated the motions as Rule 41(b) motions to dismiss. Finding neither a breach in the standard of care nor causation, the court granted the motions.
¶ 7. On appeal, Sanders claims that the trial court (1) applied an erroneous legal standard in ruling on the City of Vicksburg's motion to dismiss, (2) erred in its determination of whether the City of Vicksburg performed a discretionary function and was thereby immune under Mississippi Tort Claims Act, (3) erred in granting a dismissal to the Isle of Capri, and (4) erred in failing to consider the alleged combined negligence of the City of Vicksburg and the Isle of Capri.

*354 ANALYSIS

I. Whether the trial court applied an erroneous legal standard in ruling on the City of Vicksburg's Motion to Dismiss.
¶ 8. In clarifying the correct standard of review for a Rule 41(b) motion to dismiss, the Mississippi Supreme Court in Stewart v. Merchants Nat. Bank, 700 So.2d 255 (Miss.1997), stated:
The standard of review applicable on motion to dismiss under Rule 41(b) is different tha[n that] applicable to a motion for a directed verdict. Century 21 Deep S. Properties, Ltd. v. Corson, 612 So.2d 359 (Miss.1992); Real Estate Comm'n v. Geico Fin. Serv., 602 So.2d 1155 (Miss.1992); Mitchell v. Rawls, 493 So.2d 361, 362-63 (Miss.1986); Davis v. Clement, 468 So.2d 58, 61-62 (Miss. 1985). In considering a motion to dismiss, the judge should consider "the evidence fairly, as distinguished from in the light most favorable to the plaintiff," and the judge should dismiss the case if it would find for the defendant. Corson, 612 So.2d at 369. "The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." Id. "This Court applies the substantial evidence/manifest error standards to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41(b)." Id.

Stewart, 700 So.2d at 258-59 (emphasis added).
¶ 9. Sanders argues that the trial court was obliged to find for her given that only her evidence had been presented. She contends that it was error to grant a dismissal when the City of Vicksburg had yet to present any evidence. Sanders correctly relies upon Stewart, but misinterprets the court's holding.
¶ 10. The correct standard of review required the trial court to dismiss Sanders' claim if the trial court would have found for the City of Vicksburg with only Sanders' evidence offered. Id. at 259. The trial court was required to consider the evidence "fairly" rather than "in the light most favorable to [Sanders]." Id. We find that the trial court correctly applied the standard of review. We are now faced with the question of whether there was substantial evidence to support the trial court's finding.
¶ 11. The trial court's ruling was supported by substantial evidence. The paramedic testified that the "hallmark signs" of a placental abruption, excruciating pain and excessive bleeding, were not present. When they arrived in the restroom, both Goodwin and Holt testified that they did not see blood. Blood was neither found on the stretcher nor on the sheets. Sanders testified that blood was not found because her co-workers had wiped the blood from the floor. However, the trial court found that since neither Goodwin nor Holt testified that they saw blood then it could only find such a decision to be discretionary. Therefore, given that Sanders' condition was abnormal, whether to treat the situation as a "load and go" required Goodwin and Holt to use their own judgment. The trial court correctly deemed the paramedic's decision as discretionary.
¶ 12. Accordingly, we find this issue to lack merit.

II. Whether the trial court erred by determining that the City of Vicksburg performed a discretionary function and thereby immune under the MTCA.
¶ 13. Sanders argues that the trial court erred in finding the City of Vicksburg's employees' conduct to be discretionary *355 and thereby protected by the Mississippi Torts Claim Act ("MTCA"). She claims that the failure to immediately transport her to the hospital constituted a reckless disregard for her safety and well-being. Sanders relies on the EMT regulations as proof that the situation required a "load and go" given the late stage of her pregnancy. She argues that the EMT and paramedic's decision was ministerial and, therefore, not protected by the MTCA.
¶ 14. "The Mississippi Tort Claims Act (`MTCA') provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit." L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1138(¶ 11)(Miss.1999). Not all acts or omissions are protected. Mississippi Code Annotated Section 11-46-9 (Rev.2002) provides in pertinent part:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: ...
(c) [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury; [nor]
(d) [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.
¶ 15. The Mississippi Supreme Court has held that a duty is discretionary if it requires the official to use their judgment and discretion in the performance thereof. T.M. v. Noblitt, 650 So.2d 1340, 1343 (Miss. 1995)(citing Poyner v. Gilmore, 171 Miss. 859, 158 So. 922, 923 (1935)). However, discretionary conduct alone is not an absolute bar to liability. L.W., 754 So.2d at 1141(¶¶ 20-24) (citing Noblitt, 650 So.2d at 1346). When conduct is found to be discretionary, a determination of ordinary care must then be made before the statutory bar is raised. Pearl Public School Dist. v. Groner, 784 So.2d 911, 914(¶ 10)(Miss.2001). In contrast, an act is ministerial if it is positively imposed by law and if the performance of the conditions imposed are not dependent on an officer's judgment or discretion. L.W., 754 So.2d at 1141(¶ 22).
¶ 16. Sanders argues that the EMT's and paramedic's conduct was ministerial. Sanders relies first on the Central Mississippi EMS District Protocol Manual, specifically the "Obstetrics" section. The manual addresses the proper guidelines for emergency procedures. The Obstetrics subsection clarifies what treatment, if any, should be given to the patient. According to the protocol, a patient is to be "transport[ed] immediately if abnormal presentation, heavy bleeding, or history of previous cesarian section or multiple births" is present. There was testimony that such a presentation would constitute a "load and go" emergency.
¶ 17. However, Holt and Goodwin testified that none of the symptoms recorded in the protocol manual were present. Only Sanders' and her co-worker's testimony alleged severe bleeding. Goodwin and Holt recorded Sanders' complaints of bleeding. Although, Goodwin and Holt testified that when they looked on the floor, in the stall, around the toilet, and on the sheets from the stretcher, they found no blood. Goodwin testified that Sanders' blood pressure was taken immediately and was high. Such a reading was inconsistent *356 with the alleged massive amount of blood loss.
¶ 18. Dr. Carl Reddix, Sanders' expert witness, testified that placental abruptions also present with the classic symptom of "lots of pain." The record is void of any complaints of such pain. Rather, Sanders testified that the pains remained minor until she arrived at the hospital at 6:44 p.m. Dr. Reddix testified that he was surprised at Sanders' lack of severe pain and that it was extremely unusual to have a placental abruption with such minor pains.
¶ 19. Sanders also argues that the City of Vicksburg acted with reckless disregard for her health and safety. She claims that the failure to treat the situation as a "load and go" caused a critical delay in her reaching the hospital, and this ultimately caused Joshua's death. Dr. Reddix's opinion is relied upon by Sanders for support. Dr. Reddix opined that had Joshua been delivered within thirty minutes of onset of the abruption, Joshua would have had close to a 100% chance of survival.
¶ 20. Nevertheless, the trial court considered Dr. Reddix's opinion and found that the City was not liable. Sanders testified that she noticed the bleeding at 5:05 p.m. Dr. Reddix opined that the abruption started at 5:15 p.m. By the theory of Dr. Reddix, the chance of the child's survival depended on the child's delivery by 5:45 p.m. The ambulance report indicated that the 911 call was received at 5:59 p.m., and the ambulance arrived at 6:04 p.m. The City was not called until forty-four minutes after the abruption began and fifty-four minutes after the bleeding was noticed. Thirty minutes had expired before City's emergency team was called. The trial court correctly found that the City's actions were not the proximate cause of death.
¶ 21. "[W]hen a trial judge sits without a jury, this Court will not disturb his factual determinations where there is substantial evidence in the record to support those findings." Ezell v. Williams, 724 So.2d 396, 397(¶ 4)(Miss.1998) (citations omitted). Here, protocol was followed and none of the classic symptoms were present. Sanders did not complain of severe pain, nor did the EMT or paramedic observe massive bleeding. Whether Sanders' condition necessitated a "load and go" approach involved the emergency team's judgment. Therefore, the decision was not ministerial, but instead discretionary. The City is immune under the MTCA. Finding no error, we affirm the trial court's judgment on this issue.

III. Whether the trial court erred by granting a dismissal to the Isle of Capri Casino.
¶ 22. Sanders argues that the trial court erred in considering whether to dismiss her negligence claim against the Isle of Capri. She claims that the Isle of Capri's failure to maintain and repair the elevator caused the malfunction that led to an additional ten minute delay in her arrival at the hospital. Sanders claims that the delay contributed to and was the proximate cause of Joshua's death.
¶ 23. In granting the Rule 41(b) motion to dismiss, the trial court found that Sanders' evidence was insufficient to prove the required elements of negligence. The trial judge stated that to establish liability, Sanders would have to prove that the Isle of Capri was somehow negligent in its maintenance and repair of the elevator. Additionally, Sanders would have to prove that their negligence caused the elevator to malfunction on the day of the incident. In an effort to prove the negligence, Sanders points to previous incidents of the same elevator's malfunction. However, the trial judge found no evidence that *357 proved that Isle of Capri maintained the elevator. Rather, the evidence proved that the elevators were maintained and repaired by ThyssenKrupp. The trial court ruled that the elevator's malfunction was foreseeable, but that the negligence of the Isle of Capri was not the proximate cause of Joshua's death.
¶ 24. Sanders also relied heavily on Dr. Reddix's testimony to establish causation. Dr. Reddix's theory of Joshua's survival depended upon the delivery occurring within thirty minutes of the onset of the abruption. However, from the onset of abruption until Sanders was placed in the elevator, thirty minutes had elapsed. Sanders was loaded on the elevator at approximately 6:12 p.m., almost one hour after the estimated onset of the abruption. Even if the elevator operated properly, Sanders arrival at the hospital would have been ten minutes earlier, approximately 6:34 p.m. Thus her arrival, without the delay of the elevator, was approximately one hour and twenty minutes after the onset of the abruption. Furthermore, Dr. Reddix testified that it was pure speculation as to whether Joshua would have lived even if the delivery occurred within thirty minutes of the onset of the abruption. The trial court was within its discretion to find that Sanders failed to show a causal connection between the negligence of Isle of Capri and the death of Joshua. Therefore, this issue is also without merit.

IV. Whether the trial court erred in failing to consider the alleged combined negligence of the City of Vicksburg and the Isle of Capri.
¶ 25. Finally, Sanders argues that it was "clear error" for the trial court to consider the negligence of the City of Vicksburg and the Isle of Capri separately. Sanders' argument is that the combined negligence of the City's employees and Isle of Capri were the proximate cause of Joshua's death. The trial court considered this issue and found the allegation to be without merit. The trial court found no fault by either the City of Vicksburg or the Isle of Capri.
¶ 26. To prove that the City was liable, Sanders had to prove that the employees' duties were ministerial and not discretionary. The employees' duties were not imposed by law, nor were their actions required at a specifically designated time, or in a specifically designated manner. L.W., 754 So.2d at 1141(¶ 22) (quoting T.M. ex rel. E.N.M. v. Noblitt, 650 So.2d 1340, 1346 (Miss.1995) (Banks, J. concurring)). Therefore, the duties were not ministerial. Rather, the employees' actions were discretionary since the employees had to use their own judgment and discretion. L.W., 754 So.2d at 1141(¶ 22); T.M. ex rel. E.N.M., 650 So.2d at 1343. Accordingly, the City employees were protected by MTCA. The trial court was correct in finding that the City was not negligent.
¶ 27. Additionally, Sanders had to prove the Isle of Capri's negligence. Sanders had to prove further that the Isle of Capri's negligence was the proximate cause of Joshua's death. The trial court did not find negligence. Rather, the trial court found that it was not enough for there to be coexisting negligence and injury; the negligence must have caused the injury. Herrington v. Leaf River Forest Products, Inc., 733 So.2d 774, 779(¶ 15) (Miss.1999); Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 497, 186 So. 625, 627 (1939). There was no proof that the negligence of the Isle of Capri was the proximate cause of Joshua's death.
¶ 28. Given Sanders' failure to establish negligence on either the City of Vicksburg or the Isle of Capri, there can be no concurrent negligence as Sanders alleges. Accordingly, this issue is without merit. *358 The judgment of the trial court granting the motion to dismiss in favor of the City of Vicksburg and the Isle of Capri Casino is affirmed.
¶ 29. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, BARNES AND ISHEE, JJ. CONCUR. IRVING, J., CONCURS IN RESULT ONLY.